UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **COWBOY CHRISTIAN MISSIONS,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:24-cv-00057-O |
| § | |
| **CHURCH MUTUAL INSURANCE** § | |
| **COMPANY, SI,** § | |
| § | |
| Defendant. § | |

## **OPINION & ORDER**

Before the Court are Defendant Church Mutual Insurance Company's Amended Motion for Partial Summary Judgment, Brief, and Appendix (ECF Nos. 22–24); Plaintiff Cowboy Christian Missions's Response, Brief, and Appendix (ECF Nos. 25–27); and Defendant's Reply and Appendix (ECF Nos. 28–29). Having considered the parties' briefing and applicable law, the Court **GRANTS** Defendant's Motion.

### I.  BACKGROUND[1]

This case presents an insurance coverage dispute between a non-profit religious organization ("Plaintiff") and its insurer ("Defendant"). On March 21, 2022, Plaintiff's building complex, comprised of a sanctuary, fellowship hall, garage, and youth building (the "Property"), sustained damage as a result of an EF3 tornado (the "Loss Event"). At the time of the Loss Event, the Property was covered under an insurance policy issued by Defendant, policy no. 0240204-02-305131, with an effective date of November 5, 2021, to November 5, 2022 (the "Policy"). The Policy provided coverage for damages caused by the Loss Event, subject to the terms and conditions of the Policy.

---

[1] The Court's recitation of facts is taken from the summary judgment briefing.

Plaintiff submitted a claim for coverage under the Policy for damages allegedly sustained as a result of the Loss Event. Within two days of the Loss Event, Defendant conducted its initial inspection of the Property, which included (1) Defendant's adjuster, Ben Hodges; (2) a third-party engineer, Travis Ebisch, of Nelson Forensics, LLC; and (3) a "building consultant," Mani Siaosi, of Cavalry Construction ("Cavalry"). Based on an estimate produced by these individuals, Defendant issued payments for coverage of the claim as follows:

        April 21, 2022 - $100,000.00

        May 3, 2022 - $ 291,535.53

To date, Defendant has refused to issue additional payments for expenses and/or losses that Plaintiff believes are covered under the Policy. Among those are "relocation" costs that Plaintiff allegedly incurred while repairs were being conducted on the Property and other "non-salvageable items" damaged during the Loss Event.

Each party has hired multiple engineers and consultants to support their respective opinions. Plaintiff alleges that Defendant has failed to consider some of those reports.

On February 16, 2023, nearly one year after the Loss Event, Plaintiff sent Defendant a demand letter requesting $1,626,859.31, to which Defendant responded that it did not change its coverage position and that no additional payments were warranted under the Policy.

On January 17, 2024, unable to resolve the dispute with Defendant, Plaintiff filed suit in this Court. Plaintiff's Complaint alleges two types of claims: one is based in contract, and the rest are "extra-contractual" claims for alleged violations of the Texas Insurance Code, the Texas Deceptive Trade Practices Act ("DTPA"), fraudulent misrepresentations,[2] and breach of the common-law duty of good faith and fair dealing. Defendant moved for partial summary judgment

---

[2] To the extent that Plaintiff's Count 7 alleging fraudulent misrepresentations is an extra-contractual claim, Defendant's Motion for Partial Summary Judgment does not address it.

as to Plaintiff's extra-contractual claims on January 6, 2025. The Court gave Defendant permission to file an Amended Motion for Partial Summary Judgment, which Defendant did on January 31, 2025. The parties have briefed the issue and the Motion is ripe for review. Trial is currently scheduled on the Court's docket beginning March 24, 2025.

## II.    LEGAL STANDARD

A movant is entitled to summary judgment if by the pleadings and evidence it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*

A party seeking summary judgment must inform a court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

## III. ANALYSIS

Defendant moves for summary judgment on Plaintiff's extra-contractual claims under the Texas Insurance Code, the Texas DTPA, and common-law breach of duty of good faith and fair dealing, because Plaintiff has not shown that Defendant acted in bad faith during its processing of Plaintiff's insurance claim. Rather, Defendant argues, the evidence reflects only a bona fide

coverage dispute, which necessarily bars the extra-contractual claims that involve elements of bad faith, malice, or similar ill-intent. The Court agrees.

### A. Common-Law Claim: Breach of Duty of Good Faith & Fair Dealing

Insurance companies have a duty to deal fairly and in good faith with an insured in the processing of claims. *Arnold v. National Cnty. Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987). A plaintiff may sue for a breach of this duty if its insurer denies or delays their claim without any reasonable basis for the denial or delay. *Id*. But under Texas law, "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins.*, 801 F.3d 512, 526 (5th Cir. 2015) (cleaned up). This means that "[a]s long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham v. State Farm Mut. Auto. Ins*, 103 F.3d 456, 459 (5th Cir. 1997) (citation omitted). In other words, a genuine dispute over the scope of insurance coverage is an inherently reasonable basis for denying coverage.

To carry its initial burden, Defendant points to record evidence that it believes establishes only a bona fide coverage dispute about the actual cost to repair covered damage. First, Defendant argues that the opinions of one of Plaintiff's experts "cannot support Plaintiff's bad faith claims as they are based on [Defendant's] disagreement with an estimate with which Plaintiff's own causation expert disagrees."[3] "Even more tellingly," Defendant argues, "[Plaintiff's] loss consultant, Henry Labrie, . . . recently testified that the dispute in this case is limited to a 'difference in opinion' between the adjusters and consultants involved."[4]

---

[3] Def.'s Am. Br. Supp. Mot. Partial Summ. J. 9, ECF No. 23.
[4] *Id.* at 9–10.

In response, Plaintiff asserts that Defendant failed to conduct a reasonable investigation by ignoring evidence supporting coverage and failing to timely pay out claims. Specifically, Plaintiff contends that: (1) Defendant's own expert, Timothy Molony, found that Defendant underpaid the claim, and Defendant has made no attempt to pay the difference in five months;[5] (2) Defendant failed to investigate or consider evidence supporting coverage—namely, Charles Norman's engineering reports and Susan Lewis's damage estimate;[6] and (3) Defendant did not investigate or adjust Plaintiff's claim for relocation expenses or coverage of non-salvageable items damaged in the subject loss.[7]

In reply to Plaintiff's first contention, Defendant contends that "Mr. Molony's estimate alone cannot be used to support an allegation that [Defendant] underpaid the claim in violation of its duty of good faith and fair dealing," because Mr. Molony did not actually opine on whether the costs he estimated were "covered costs."[8] For support, Defendant submits a declaration of Mr. Molony confirming that he included $44,364.31 of additional costs "in an abundance of caution" because he could not determine whether those damages were caused by the Loss Event.[9] The Court agrees that Mr. Molony's report alone does not establish that Defendant underpaid the claim—not because Mr. Molony included costs "in an abundance of caution"—but because there are at least three conflicting estimates from experts like Mr. Molony, and the Court has no reason to give his more credence than the others at this time.

In reply to Plaintiff's second contention, Defendant contends that "[Defendant's] counsel, on behalf of [Defendant], addressed both the Susan Lewis estimate and Charles Norman's reports

---

[5] Pl.'s Br. Supp. Pl.'s Resp. Def.'s Mot. Partial Summ. J. 6–7, ECF No. 26.
[6] *Id.* at 7–8.
[7] *Id.* at 8–9.
[8] Def.'s Reply Br. Supp. Mot. Partial Summ. J. 6–7, ECF No. 28.
[9] App. Supp. Def.'s Reply Br. Ex. O (Molony Aff.), App. 598–60, ECF No. 29-2.

via correspondence dated June 5, 2023, after [Defendant] and its counsel and experts had time to evaluate these items and prepare its response."[10] Defendant does not respond to Plaintiff's specific contention that no one in Defendant's *claims department* evaluated the reports.[11] Defendant's representative even admitted in her deposition that no one in the claims department reviewed the reports.[12] But Plaintiff cites to no legal authority or industry standard that suggests *who* is responsible for investigating new evidence, or why, once counsel and third-party experts are involved, they cannot fulfill this duty. In the absence of such authority, and in light of Defendant's June 5, 2023, letter addressing the Lewis and Norman reports, the Court concludes that no reasonable juror could agree with Plaintiff that Defendant ignored evidence supporting coverage.

In reply to Plaintiff's final contention, Defendant argues that it did not need to adjust its payment for extra expenses because Plaintiff did not meet its burden of showing that its relocation expenses were necessary.[13] Under Texas law, it is the policyholder's burden to demonstrate that a claim is covered under the policy. *Primrose Operating Co. v. Nat'l Am. Ins.,* 382 F.3d 546, 553 (5th Cir. 2004) (citation omitted). And here, the Policy defines a covered "extra expense" as a "necessary 'additional expense' . . . incur[red] during the 'period of restoration,'" to, for example, avoid having to suspend operations.[14] The Court agrees with Defendant that Plaintiff does not presently meet its burden of showing that it incurred any extra expenses.[15]

Here, Plaintiff does not attempt to list its relocation expenses, so the Court cannot determine which expenses were "necessary." Instead, Plaintiff refers generally to "American

---

[10] Def.'s Reply Br. Supp. Mot. Partial Summ. J. 7, ECF No. 28.
[11] Pl.'s Br. Supp. Pl.'s Resp. Def.'s Mot. Partial Summ. J. 4, 7–8, ECF No. 26.
[12] App. Supp. Pl.'s Resp. Def.'s Mot. Partial Summ. J. (Pingel Dep.) 89:25, 90:1–6, App. 79–80, ECF No. 26-3.
[13] Def.'s Reply Br. Supp. Mot. Partial Summ. J. 7–9, ECF No. 28.
[14] Pl.'s Br. Supp. Pl.'s Resp. Def.'s Mot. Partial Summ. J. 8, ECF No. 26.
[15] This holding does not impact whether Plaintiff can prove any extra expenses under its breach-of-contract claim.

Express charges" and "an invoice from M&M Construction" that Plaintiff submitted to Defendant, which Plaintiff's representative, Kort Weldon, was asked about in his deposition.[16] And, according to Plaintiff, "Mr. Weldon testified that these were expenses incurred when Cowboy Christian had to relocate to another building to resume operations."[17] But absent an itemized list and specific support for each item, Plaintiff's contention that it incurred "extra expenses" is an unsubstantiated legal conclusion.

As to Plaintiff's separate contention that Defendant failed to investigate any non-salvageable contents that might be covered,[18] the record evidence shows that Defendant sent a third-party inspector to investigate whether the audio-visual equipment in the sanctuary was damaged.[19] However, to the extent that Plaintiff argues that Cavalry conducted an inventory of *all* non-salvageable items and Defendant never produced that inventory, then Defendant should produce that inventory if it was requested. But this fact alone does not create a genuine dispute of fact that Defendant acted in bad faith, because Plaintiff fails to provide any legal authority or industry standard that says it is the insurer's obligation to document the damaged contents in the first instance. If Plaintiff has since produced a more exhaustive contents list, Defendant is obligated to investigate those claims.

Accordingly, the Court **GRANTS** Defendant's Motion with respect to Plaintiff's claim for common-law breach of duty of good faith and fair dealing.

---

[16] *Id.*
[17] *Id.* at 8–9.
[18] *Id.* at 9.
[19] Pingel Dep., 47:5–10, App. 69, ECF No. 26-3; App. Supp. Def.'s Reply Br. Ex. U (StrikeCheck Report), App. 631–72, ECF No. 29-2.

### B. Statutory Claims: Violations of the Texas Insurance Code & Texas DTPA

Texas courts have recognized the close relationship between common-law bad-faith claims and the statutory bad-faith claims found in the Texas Insurance Code and DTPA. "Although these claims are individual causes of action which do not depend on each other for support, Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham*, 103 F.3d at 460 (collecting cases); TEX. INS. CODE § 541.001 *et seq*. Stated otherwise, "[b]ecause the statutory and common law standards are now the same, a finding that there is no common law violation as a matter of law also eliminates the statutory claims alleged by plaintiffs in this case." *Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 579 (W.D. Tex. 1999).

Therefore, the Court's reasoning with respect to Plaintiff's claim of breach of duty of good faith and fair dealing applies to Plaintiff's statutory claims as well. Accordingly, Defendant's Motion is **GRANTED** as to Plaintiff's extra-contractual statutory claims.

### IV. CONCLUSION

For the reasons stated, Defendant's Amended Motion for Partial Summary Judgment is **GRANTED**. Plaintiff's statutory claims under the Texas Insurance Code and the DTPA and Plaintiff's common-law claim for breach of duty of good faith and fair dealing are **DISMISSED with prejudice**. The remaining claims for trial are breach of contract and fraudulent misrepresentations.

**SO ORDERED** on this **7th day** of **March, 2025.**

Reed O'Connor
UNITED STATES DISTRICT JUDGE